IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | ) | Chapter 11 |
| | ) | Case No. 09-11244 (PJW) |
| NEXPAK CORPORATION, *et al.*,[1] | ) | Jointly Administered |
| | ) | |
| Debtors. | ) | **Related Docket No. 399** |

## DECLARATION OF KEVIN I. DOWD IN SUPPORT OF THE DEBTORS' FIRST AMENDED JOINT PLAN OF LIQUIDATION OF NEXPAK CORPORATION AND ITS AFFILIATED DEBTORS

I, Kevin I. Dowd, hereby declare:

1. I am the President and Chief Restructuring Officer of NexPak Corporation and its affiliated debtors and debtors-in-possession (the "Debtors"). The Debtors were leading manufacturers, marketers and distributors of specialty plastic packaging solutions for a variety of music, movie and video game media in the United States, Canada, Mexico, Argentina, Europe, Japan, China, Australia and New Zealand.

2. I submit this Declaration in support of confirmation of the First Amended Joint Plan of Liquidation of NexPak Corporation and its affiliated Debtors dated as of September 29, 2009 (as amended or modified, the "Plan"). Capitalized terms used but not expressly defined herein shall have the meaning ascribed to such terms in the Plan or the related Disclosure Statement (as amended or modified, the "Disclosure Statement").

**WITNESS BACKGROUND**

3. I am the President and Chief Restructuring Officer of the Debtors and have held that position since November 2008. I have more than 30 years of sales, marketing, operations,

---

[1] The Debtors are the following entities: NexPak Corporation (2207); Atlanta Precision Molding Co., LLC (4923); EPM Holdings, Inc. (4658); NexPak Holdings LLC (8844); JMC Acquisition LLC (1660); and AEI Acquisition LLC (1655).

administrative and general management experience gained both domestically and abroad. In addition to having held a variety of operating management positions in the office products, computer, consumer banking and investment banking industries, I have served as the President and Chief Executive Officer of more than 30 companies, including a multi-billion dollar wireless web connect provider, a $1 billion international shipping company and an $800 million computer distributor. I was a principal at Nightingale & Associates where I managed debtor and creditor advisory engagements in a wide variety of industries including consumer electronics, real estate, capital goods manufacturers, consumer furniture, aircraft, ocean shipping, office products, retail and wholesale distribution, healthcare, medical equipment manufacturer, and agricultural cooperatives. Additionally, I have served as CEO, CRO and financial advisor to senior lenders and bondholders in bankruptcy situations. Prior to my consulting positions, I served as the Chief Operating Officer of First Boston's Investment Bank where I was a member of the Investment Banking Committee and the Management Committee. I have also served in numerous senior management positions with Citicorp, both domestically and abroad.

4. I have served as President and CRO of the Debtors since November, 2008. My duties for the Debtors included responsibility for overseeing the daily business operations, the sale of the Debtors assets and, and, since the closing of such sale, the responsibility for the wind-down of the Debtors operations. In this capacity, I am generally familiar with the Debtors' day-to-day operations, business records, and business affairs.

5. All facts set forth in this Declaration are based on my personal knowledge, upon information supplied to me by persons who report to me, upon information supplied to me by the Debtors' professionals and consultants, upon my review of relevant documents, or upon my opinion based on my experience and knowledge with respect to the Debtors' operations,

financial condition and related business issues. Any documents referenced herein or otherwise relied upon by me for purposes of this Declaration are the business records of the Debtors, prepared and kept in ordinary and regularly conducted business activity of the Debtors, and used by me for those purposes. If I were called upon to testify, I could and would testify competently to the facts set forth herein, and I am authorized to submit this Declaration on behalf of the Debtors.

**BACKGROUND FACTS**

6. On April 10, 2009, the Debtors each filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C §§ 101 *et seq*. (the "Bankruptcy Code"). The United States Trustee appointed the Creditors' Committee on April 22, 2009.

7. On July 15, 2009, the Bankruptcy Court entered an order approving the Settlement Stipulation among the Debtors, NexBank, SSB, administrative agent for the Debtors' Pre-Petition Lenders and the Creditors' Committee. The salient terms of the Settlement Stipulation are as follows: the Pre-Petition Lenders agreed to make available from the proceeds of their collateral for administrative expenses and other claim holders, excluding any general unsecured claims held by the Pre-Petition Lenders, the following amounts: cash in the amount of $100,000 (the "Unsecured Creditor Carve-Out"); 2% of the proceeds generated from the sale of the Debtors' assets exceeding $25 million;[2] the amount needed to pay all Allowed Section 503(b)(9) Claims up to the aggregate amount of $110,000; and the amount needed to pay all Budgeted Administrative Expense Claims. Allowed Administrative Expense Claims, other than Budgeted Administrative Expense Claims and Section 503(b)(9) Claims, will be paid out of the

---

[2] The proceeds from the sale of the Debtors' assets did not exceed $25 million. Accordingly, there are no additional amounts that will be made available to creditors other than the Pre-Petition Lenders from the proceeds of the sale of the Debtors' assets.

Unsecured Creditor Carve-Out. In consideration for these payments, each of the Debtors, the Creditors' Committee and the Lenders agreed to waive, release and discharge any and all claims and/or Causes of Action of the Debtors' estates as requested by the Pre-Petition Lenders or the Creditors' Committee, including, the Estates' and/or the Pre-Petition Lenders' right to pursue Causes of Action arising under Section 5 of the Bankruptcy Code.

8. On July 23, 2009, the Bankruptcy Court entered the Sale Order, approving the sale of substantially all of the Debtors' equipment, inventory, molds, and intellectual property rights to the Purchaser. The purchase price was $1,500,000 prior to certain purchase price adjustments. The sale to the Purchaser closed on July 30, 2009. The final purchase price was $1,435,000.

9. On September 3, 2009, the Debtors filed their *Joint Plan of Liquidation for Nexpak Corporation and Its Affiliated Debtors* (Docket No. 333) and related disclosure statement (Docket No. 334). On September 29, 2009, the Debtors filed their *First Amended Joint Plan of Liquidation for Nexpak Corporation and Its Affiliated Debtors* (Docket No. 399) (as it may be further amended, the "Plan") and *First Amended Disclosure Statement for First Amended Joint Plan of Liquidation for Nexpak Corporation and Its Affiliated Debtors* (Docket No. 400) (as it may be further modified, the "Disclosure Statement"). On September 30, 2009 the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered its *Order (I) Approving Disclosure Statement; (II) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Plan, Including (A) Approving Form and Manner of Solicitation Packages, (B) Approving Form and Manner of Notice of Confirmation Hearing, (C) Establishing Record Date and Approving Procedures for Distribution of Solicitation Packages, (D) Approving Forms of Ballots, (E) Establishing*

4

*Deadline for Receipt of Ballots, and (F) Approving Procedures for Vote Tabulations; (III) Establishing Deadline and Procedures for Filing Objections to Confirmation of Plan; and (IV) Granting Related Relief* (the "Solicitation Procedures Order") (Docket No. 407). The Solicitation Procedures Order (i) approved the Disclosure Statement, pursuant to section 1125 of the Bankruptcy Code as containing adequate information; (ii) approved the form and manner of notice of the hearing on the Disclosure Statement pursuant to section 1125 of the Bankruptcy Code, (iii) established procedures for the solicitation and tabulation of votes to accept or reject the Plan, including approval of (a) the forms of ballots for submitting votes on the Plan, (b) the deadline for submission of ballots, (c) the contents of proposed solicitation packages to be distributed to creditors and other parties in interest in connection with the solicitation of votes on the Plan (the "Solicitation Packages") and (d) the proposed record date for voting on the Plan, and (iv) scheduled a hearing on confirmation of the Plan.

10. Delaware Claims Agency ("DCA"), the Debtors' claims, notice and balloting agent (the "Balloting Agent"), transmitted the Solicitation Packages in compliance with the Solicitation Procedures Order, as attested to in the various affidavits of service on file with the Court, including Docket Numbers 419 and 420 and 422.

11. On May 14, 2010, DCA filed the *Certification of Joseph L. King With Respect To the Tabulation of Votes to Accept or Reject the Debtors' First Amended Joint Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* (Docket No. 327) (the "Vote Certification"), attesting to the tabulation of all ballots received by DCA from Holders of Class 3 Claims (Pre-Petition Lenders' Secured Claims) and Class 4 Claims (General Unsecured Claims) and attesting to the results of the tabulation as follows:

5

a. <u>Class 3 (Pre-Petition Lenders' Secured Claims)</u>. Class 3 voted in favor of the Plan. In claim amount, a total of $53,216,569.39 in claims (100 %) in Class 3 voted to approve the Plan. For numerosity, the Plan was approved by 8 of 8 (100 %) of Class 3 voting creditors. No ballots were invalid.

b. <u>Class 4 (General Unsecured Claims)</u>. Class 4 voted in favor of the Plan. In claim amount, a total of $2,041,794.89 in claims (99 %) in Class 4 voted to approve the Plan. For numerosity, the Plan was approved by 32 of 34 (94 %) of Class 4 voting creditors. No ballots were invalid.

12. A hearing to consider confirmation of the Plan is scheduled for May 18, 2010 (the "Confirmation Hearing").

## **LIMITED SUBSTANTIVE CONSOLIDATION**

13. The Plan is premised upon "substantively consolidating" the Debtors for the limited purposes of confirming and consummating the Plan, primarily to facilitate making distributions to creditors in satisfaction of their Claims. The Plan contemplates that each and every Claim filed or to be filed in the Chapter 11 Cases against any Debtor will be considered filed against the consolidated Debtors and shall be considered one Claim against and obligation of the substantively consolidated Debtors. The Plan also contemplates all guaranties by any of the Debtors of the obligations of any Debtors arising prior to the Effective Date being considered eliminated so that any Claim against any Debtor and any guaranty thereof executed by any other Debtor and any joint and several liability of any of the Debtors shall be considered to be one obligation of the deemed consolidated Debtors. The proposed substantive consolidation will not affect any liens or other security interests held by the Pre-Petition Lenders. The Debtors believe that the Plan, with its contemplated limited substantive consolidation of the Debtors' Estates, is the best option currently available for the Debtors and their creditors as a whole.

14. I believe that substantive consolidation of the Debtors for the purpose of confirming and consummating the Plan is appropriate because, prior to the Petition Date, the Debtors disregarded separateness so significantly that their creditors relied on the breakdown of entity borders and treated them as one legal entity as set forth below:

   i. Both customers, on one hand, and suppliers, service providers, vendors and other creditors, on the other, treated the Debtors as a single business and did not distinguish between the individual Debtor entities.

   ii. The Debtors kept consolidated financial statements and service providers and vendors relied on the credit worthiness of the Debtors collectively.

   iii. The Debtors use a single integrated purchasing system.

   iv. The Debtors maintained an integrated cash management system.

   v. The administrative and back-office operations were conducted jointly from the Debtors' integrated corporate headquarters in Duluth, Georgia.

   vi. Necessary corporate actions of the subsidiary Debtors were generally consistent with and reflected the corporate decisions initiated and policies made by NexPak Corporation on behalf of the integrated business.

   vii. The Debtors consistently held themselves out as a single, integrated business.

   viii. The Pre-Petition Lenders are the Debtors' only institutional creditors. Each of the Debtors is either a borrower or a guarantor under the Pre-Petition Credit Agreement.

   ix. The obligations under the Pre-Petition Credit Agreement are secured by substantially all of the assets of each of the Debtors.

## **STATISFACTION OF CONFIRMATION REQUIREMENTS**

Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1).

15. Based on my understanding of the requirements for confirming a plan under the Bankruptcy Code, I understand that the Plan complies with all applicable provisions of the

Bankruptcy Code and Bankruptcy Rules, including sections 1122 and 1123 of the Bankruptcy Code.

Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)).

16. I understand that Section 1122 of the Bankruptcy requires that claims or interests in a class be substantially similar to other claims or interests in that class. The Plan establishes separate classes of Claims and Interests in Section 3.2. I believe that classification of these Claims or Interests is proper and consistent with section 1122 of the Bankruptcy Code because each Claim or Interest classified in a Class is substantially similar to the other Claims or Interests in that Class.

17. I understand that Section 1123(a)(1) of the Bankruptcy Code requires that a plan classify all claims and interests, except for certain administrative and priority claim. The Plan establishes five classes of Claims and one class of Interests. Additionally, Article IV of the Plan designates (but does not classify) Claims of the type described in section 507(a)(1) of the Bankruptcy Code (Administrative Expense Claims) and Claims of the type described in section 507(a)(8) of the Bankruptcy Code (Priority Tax Claims).

Specified Classes of Unimpaired Claims (11 U.S.C. § 1123(a)(2)).

18. I understand that Section 1123(a)(2) of the Bankruptcy Code requires that a plan specify classes of unimpaired claims or interests. Article V of the Plan satisfies this requirement by specifying that Class 1 (Priority Tax Claims) and Class 2 (Other Secured Claims) are unimpaired.

Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)).

19. I understand that Section 1123(a)(3) of the Bankruptcy Code requires that a plan specify the treatment of classes of impaired claims or interests. Article V of the Plan sets forth

the treatment of each impaired Class of Claims or Interests, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

No Discrimination (11 U.S.C. § 1123(a)(4)).

20. I understand that Section 1123(a)(4) of the Bankruptcy Code requires that a plan provide for the same treatment of each claim or interest within a particular class. Articles IV and V of the Plan provide that the treatment of each Claim or Interest in each particular Class or Interest is the same as the treatment of any such Claim or Interest in such Class, unless the particular Holder of a Claim or Interest has agreed to a less favorable treatment of such particular Claim or Interest, thereby satisfying section 1124(a)(4) of the Bankruptcy Code.

Implementation of the Plan (11 U.S.C. § 1123(a)(5)).

21. I understand that Section 1123(a)(5) of the Bankruptcy Code requires that a plan provide adequate means of implementing a plan. The Plan satisfies this requirement. Article VI of the Plan provides for, among other things, the substantive consolidation of the Debtors for purposes of consummating the Plan (Section 6.1), the vesting of the Debtors' assets in the Reorganized Debtors (Section 6.2(a)), the appointment of a Plan Administrator to implement the Plan (Section 6.2(b) and (c)), a means for making distributions under the Plan (Section 6.3), preservation of Causes of Action (Section 6.4), the payment of fees and filing of reports required by the United States Trustee (Section 6.6) and the corporate existence and dissolution of the Debtors (Section 6.8).

No Nonvoting Equity Securities (11 U.S.C. § 1123(a)(6)).

22. I understand that Bankruptcy Code section 1123(a)(6) requires that a plan provide for a reorganized corporate debtor's charter to include provisions (i) prohibiting the issuance of non-voting equity securities, and (ii) providing for an "appropriate distribution" of voting power

9

among securities possessing voting power. The Plan is a liquidating plan, and does not provide for the issuance of equity or other securities to creditors or equity holders. The Plan Administrator will be the sole equity holder of each of the Debtors. Thus, the requirements of section 1123(a)(6) of the Bankruptcy Code have been satisfied.

<u>Selection of Officers, Directors or Trustee (11 U.S.C. § 1123(a)(7))</u>.

23.　　I understand that Bankruptcy Code section 1123(a)(7) provides that a plan must "contain only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director, or trustee under the plan and any successor to such officer, director or trustee." I further understand that these requirements substantially overlap the provisions of Bankruptcy Code section 1129(a)(5)(A)(ii) concerning appointment of officers, directors and voting trustees.

24.　　Section 6.2(b) of the Plan provides that the Plan Administrator shall be the sole officer, director and equity holder of each of the Debtors following the Effective Date. As set forth in the Plan Administrator Agreement attached as Exhibit A to the *Notice of Filing of Plan Administrator Agreement* (the "Plan Administrator Notice") (Docket No. 627) filed on May 14, 2010, I will serve as the Plan Administrator and will be the sole officer and director of each of the Debtors. I am well qualified to serve as Plan administrator due to my knowledge of the Debtors, their operations, and the wind-down of their estates. The terms of my retention as Plan Administrator have been disclosed to creditors and parties in interest through the filing of the Plan Administrator Notice. In accordance with section 1123(a)(7) of the Bankruptcy Code, selection of the Plan Administrator is consistent with the interests of creditors, equity security holders and with public policy.

Permissive Provisions (11 U.S.C. § 1123(b)).

25. I understand that Bankruptcy Code section 1123(b) provides that a plan may include, among other things, "any other appropriate provision not inconsistent with the applicable provisions of this title." I believe that the Plan contains appropriate permissive provisions intended to facilitate a prompt resolution of the Debtors' chapter 11 cases.

Debtors' Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2)).

26. I understand that Bankruptcy Code section 1129(a)(2) requires that a plan proponent comply with the applicable provisions of the Bankruptcy Code and that the principal purpose of this subsection is to ensure that a plan proponent has complied with Bankruptcy Code section 1125's disclosure and solicitation requirements. I believe that the Debtors have satisfied this requirement. The Court has entered an Order approving the Disclosure Statement as containing adequate information to permit parties to vote on the Plan and authorizing the Debtors to transmit solicitation materials to parties entitled to vote on the Plan. As set forth in the Certification of Ballots, filed May 14, 2010 (Docket No. 633), the Debtors have transmitted solicitation materials in accordance with Court approved procedures and applicable statutes and rules.

Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)).

27. I understand that Bankruptcy Code section 1129(a)(3) requires that a plan be "proposed in good faith and not by any means forbidden by law" and that this Court has held that good faith exists where a plan has been proposed with the legitimate purpose of reorganizing the business affairs of debtors and maximizing the results available to debtors' creditors. I believe that the Plan satisfies this requirement.

28. The Debtors proposed the Plan with the purpose of maximizing the value of its assets for the benefit of its constituents. Consummation of the Plan will implement the Settlement Stipulation and provide for the distribution of the Unsecured Creditor Carve-Out and the Section 503(b)(9) Carve-Out. Absent confirmation of the Plan, the only likely scenario would be a conversion to Chapter 7, which would likely result in the depletion of these carve-outs to pay Chapter 7 administrative expenses. Moreover, the Plan deals fairly with creditors and preserves their respective priorities and the purpose of the Settlement Stipulation.

Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).

29. I understand that Bankruptcy Code section 1129(a)(4) requires that any payments by a debtor "for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case" be approved by the Court as reasonable. I believe that the Plan satisfies this requirement. Section 4.1(a) provides that only Holders of Allowed Administrative Expenses will receive payment on account of their Claims. Section 4.1(b) requires Professionals and other entities seeking an award from the Court for compensation for services rendered and/or reimbursement of expenses through and including the Effective Date under Sections 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code to file final applications for compensation for services rendered and reimbursement of expenses. Such Claims will not be finally paid until final approval by the Court. Accordingly, section 1129(a)(4) of the Bankruptcy Code is satisfied.

Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)).

30. Please refer to my statement in paragraphs 23 and 24 above.

No Rate Changes (11 U.S.C. § 1129(a)(6)).

31. I understand that Bankruptcy Code Section 1129(a)(6) requires that a debtor whose rates are subject to government regulation obtain appropriate approval of any rate change proposed in a plan, or that the rate change be expressly conditioned on such approval. The transactions contemplated by the Plan do not involve any rates established, approved by, or otherwise subject to, any governmental regulatory commission. Therefore, I believe that Section 1129(a)(6) is inapplicable to these Chapter 11 cases.

Best Interests of Creditors Test (11 U.S.C. § 1129(a)(7)).

32. I understand that Bankruptcy Code Section 1123(a)(7) establishes what is commonly referred to as the "best interest" test -- the requirement that holders of impaired claims or interests who do not vote to accept the plan "receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7." I further understand that, if the Court finds that each non-consenting member of an impaired class will receive at least as much under the Plan as it would receive in a chapter 7 liquidation, the Plan satisfies the "best interests" test. I believe that Holders of Claims against and Interests in the Debtors will receive an equal or greater recovery under the Plan than they would in a chapter 7 liquidation as set forth below.

33. The Debtors are liquidating and therefore are not seeking to require Creditors to accept non-cash consideration, such as equity, so that the Reorganized Debtors can pursue going concern value. Accordingly, the only question is whether the creditors will recover more (or at least as much) under the Plan as they would recover through an asset liquidation and distribution by a chapter 7 trustee.

13

34. To determine the value that a Holder of a Claim or Interest in an impaired Class would receive if the Debtors was liquidated under chapter 7, I understand that the Bankruptcy Court must determine the aggregate dollar amount that would be generated from the liquidation of the Debtors' Assets if the Debtors' Chapter 11 Cases had been converted to a chapter 7 liquidation case and the Debtors' Assets were liquidated by a chapter 7 trustee (the "Liquidation Value"). The Liquidation Value would consist of the net proceeds from the disposition of the Debtors' Assets, augmented by Cash held by the Debtors and reduced by certain increased costs and Claims that arise in a chapter 7 liquidation case that do not arise in a chapter 11 reorganization case.

35. Under the Plan, the Debtors will avoid the increased costs and expenses of a chapter 7 liquidation, including the fees payable to a chapter 7 trustee and his or her professionals. The Cash to be distributed to Creditors would be reduced by the chapter 7 trustee's statutory fee. Moreover, the chapter 7 trustee's professionals, including legal counsel and accountants, would add substantial administrative expenses that would be entitled to be paid ahead of Allowed Claims against the Debtors. Moreover, the Debtors have begun reconciling Claims and analyzing Causes of Action. A chapter 7 trustee would, to an extent, have to duplicate these efforts at additional expense to the Estates.

36. Additionally, a chapter 7 liquidation could result in a significant delay in distributions. Bankruptcy Rule 3002(c) provides that conversion of chapter 11 case to chapter 7 will trigger a new bar date for filing claims against the estate, and that the new bar date will be more than 90 days after the Chapter 11 Cases convert to chapter 7. Not only would a chapter 7 liquidation delay distribution to creditors, but it is possible that additional claims that were not asserted in the chapter 11 case, or were late-filed, could be filed against the estates. In contrast,

under the Plan, the Reorganized Debtors will be able to begin making distributions on the Effective Date or shortly thereafter.

37. Finally, the Plan provides that Operating Expenses following the Effective Date will be paid from the Operating Reserve. There would be no Operating Reserve in a chapter 7 liquidation so all Operating Expenses would have to be paid from the Unsecured Creditor Carve-Out. Accordingly, it is likely that a conversion to chapter 7 would deplete the Unsecured Creditor Carve-Out, leaving no funds available for distribution to Holders of Allowed Administrative Claims, Priority Claims and General Unsecured Claims.

Acceptance of Plan by Impaired, Voting Classes (11 U.S.C. § 1129(a)(8)).

38. I understand that Bankruptcy Code Section 1129(a)(8) requires that each class of claims and interests established under a plan either accepts the plan or is not impaired under the plan. I further understand that a class of claims accepts a plan if holders of at least two-thirds in dollar amount and more than one-half in number of claims in that class vote to accept the plan, counting only those claims whose holders actually vote. I also understand that a class of claims or interests that is not impaired is deemed to accept the plan and that a class of claims or interests that does not receive or retain any property under the plan is deemed to reject the plan.

39. Classes 1 (Priority Non-Tax Claims) and 2 (Other Secured Claims) are not impaired by the Plan and are conclusively presumed to have voted to accept the Plan. Class 5 (Pre-Petition Lenders' Deficiency Claims) will not retain any value or receive any distribution under the Plan but are deemed to have accepted the Plan consistent with the Settlement Stipulation. Class 6 (Interests) will not retain any value or receive any distribution under the Plan and are deemed to reject the Plan. Class 3 (Pre-Petition Lenders' Secured Claims) and

15

Class 4 (General Unsecured Claims) are impaired by the Plan and were entitled to vote on the Plan. As attested in the Vote Certification, Classes 3 and 4 have voted to accept the Plan.

Treatment of Administrative and Priority Tax Claims (11 U.S.C. § 1129(a)(9)).

40. I understand that Bankruptcy Code Sections 1129(a)(9)(A), (B) and (C) contain certain requirements concerning the payment of priority claims. I believe that Sections 4.1, 4.2 and 5.1 of the Plan satisfy these requirements by providing that, unless they have agreed to a different treatment, Holders of Allowed Administrative Claims and Allowed Priority Claims will receive cash equal to the allowed and unpaid amount of their Claims.

Acceptance by at Least One Impaired Class (11 U.S.C. § 1129(a)(10)).

41. Please refer to my statements in paragraphs 38 and 39, above.

The Plan is Feasible (11 U.S.C. § 1129(a)(11)).

42. I understand that Bankruptcy Code Section 1129(a)(11) provides that a plan may be confirmed only if confirmation "is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." The Plan is a liquidating plan and is therefore inherently feasible.

43. Moreover, the Reorganized Debtors will have sufficient assets to make the distributions required by the Plan and the Bankruptcy Code. I am generally familiar with the filed Administrative Claims and Priority Claims and the objections to claims filed by the Debtors and I believe, based on claims filed to date and the objections, that (i) Allowed Administrative Expense Claims other than Budgeted Administrative Expense Claims and Section 503(b)(9) Claims will not exceed $13,000, (ii) allowed Section 503(b)(9) Claims will not exceed $15,000 and (iii) Allowed Priority Claims will not exceed $77,000. The Debtors will have sufficient

funds from the Unsecured Creditor Carve-Out and the Section 503(b)(9) Carve-Out to pay these Claims.

Payment of Fees (11 U.S.C. § 1129(a)(12)).

44.     I understand that Bankruptcy Code Section 1129(a)(12) requires that all fees payable under 28 U.S.C. § 1930 are paid or that the plan provide for their payment on the effective date of the plan. Article 6.6 of the Plan provides that, on and after the Effective Date, all fees due and payable pursuant to 28 U.S.C. § 1930 shall be paid quarterly, thereby satisfying section 1129(a)(12) of the Bankruptcy Code.

Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)).

45.     I understand that Bankruptcy Code Section 1129(a)(13) requires that a plan provide for the continuation of retiree benefits for the duration of the period that the debtor has obligated itself to provide such benefits. Section 1129(a)(13) is inapplicable because the Debtors' are not obligated, now or in the future, to pay retiree benefits.

The Plan is Fair and Equitable; No Unfair Discrimination (11 U.S.C. § 1129(b)).

46.     The Plan does not "discriminate unfairly" and is fair and equitable with respect to each Impaired Class of Claims or Interests that has not voted to accept the Plan. Classes 1 (Priority Non-Tax Claims) and 2 (Other Secured Claims) are not impaired by the Plan and are conclusively presumed to have voted to accept the Plan. As attested in the Vote Certification, Classes 3 and 4 have voted to accept the Plan. Class 5 is not receiving any distribution under the Plan but is deemed to have accepted the Plan consistent with the Settlement Stipulation. Class 6 (Interests) will not retain any value or receive any distribution under the Plan and are deemed to reject the Plan. The Plan does not unfairly discriminate against Holders of Interests in Class 6. Because Class 6 is the only Class of Interest Holders, a reasonable basis exists for separately

17

classifying the Class 6 Interested Holders. The Plan is fair and equitable with respect to Class Interest Holders because no holder of a Claim or Interest that is junior to the Interests in Class 6 will receive any property on account of such Interests. Accordingly, the Plan satisfies the absolute priority rule of section 1129(b)(2) of the Code and is fair and equitable with respect to Class 6.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my information, knowledge and belief.

Executed this __ day of May, 2010.

_____
Kevin I. Dowd
President and Chief Restructuring Officer
NexPak Corporation, et al.

classifying the Class 6 Interested Holders. The Plan is fair and equitable with respect to Class Interest Holders because no holder of a Claim or Interest that is junior to the Interests in Class 6 will receive any property on account of such Interests. Accordingly, the Plan satisfies the absolute priority rule of section 1129(b)(2) of the Code and is fair and equitable with respect to Class 6.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my information, knowledge and belief.

Executed this 17th day of May, 2010.

_____
Kevin I. Dowd
President and Chief Restructuring Officer
NexPak Corporation, et al.

18